Howard A. Zeller, J.
This action has been brought to compel the defendants to issue plaintiff a Doctor of Veterinary Medicine degree and to recover $95,000 in damages for alleged reduced earnings. Defendant Poppensiek is Dean of the defendant State Veterinary College, which is a college in the defendant Cornell University.
Defendants moved to dismiss the complaint upon the ground the action may not be maintained because of the Statute of Limitations (CPLR 3211, subd. [a], par. 5) and for failure to state a cause of action (CPLR 3211, subd. [a], par. 7). Counsel were advised on May 28,1971 that I intended .to treat the motion as one for summary judgment (CPLR 3211, subd. [c]) and were permitted to file additional affidavits and other proof by June 24,1971.
There is no dispute over the factual events. Plaintiff Peter G-. Balogun, a native of Nigeria, registered as a special student at the university from September, 1960, through June, 1961, taking primarily academic studies to meet entrance requirements of the New York State Veterinary College of the University. From September, 1961, through June, 1966, he pursued a regular course of study at the Veterinary College, including repeating Ms third year of veterinary studies because of initial failing grades in those courses. Plaintiff did complete the veterinary curriculum with “ passing ” grades in the required courses in the month of June, 1966.
By a 39 to 1 vote on June 9, 1966 of the Veterinary College faculty, based upon a prior unanimous recommendation of the faculty class committee for the class of 1966, it was decided that plaintiff should not be graduated from the Veterinary College due to unsatisfactory academic performance, particularly in the two semesters of his senior year. Plaintiff then ranked 54th in a class of 54 with a first senior semester academic point average of 1.681 and a last semester point average of 1.352. The lowest final semester point average of graduates of the class of 1966 was 1.895. The faculty committee also found Mr. Balogun should not be permitted to reregister.
The lowest final semester average of students permitted to graduate from 1960 through 1969 are:
1960 1.650
1961 1.979
1962 1.931
1963 1.764
1964 2.183
*476 1965 1.812
1966 1.895
1967 1.635
1968 1.733
1969 1.857
Thus, during this 10-year period no student graduated whose final semester average was less than 1.635.
The thrust of plaintiff’s complaint and of his affidavit in opposition to its dismissal sound in contract and thus is timely brought. Plaintiff contends that he duly completed the requisite number of courses with passing grades, spent more than the requisite number of years in residency at the college, and otherwise met the “ requirements for graduation (d.v.m.) ” as outlined in a New York State Veterinary College bulletin in effect at all times here pertinent.
On February 10,1966 Dr. A. GL Danks, then Chairman of the Committee on Deficient Students of the Veterinary College (among other offices), replied to an inquiry from the Nigerian Consulate concerning Peter Balogun as follows in part: “Mr. Peter Balogun has completed the fall term of the 1965-66 academic year in a satisfactory manner. It would be nice if he had higher averages * * * At the end of his third year in the professional school, Mr. Balogun was ranked 42nd in a class of 54. For the seventh term, just completed, he ranked 54th in a class of 54. He must continue to do at least as well as he is presently doing in order to graduate ”.
Such performance did not occur. From a fall .senior semester point average of 1.681 Mr. Balogun dropped to a spring senior semester point average of 1.352.
Plaintiff now contends that the point standards applied to him added an additional requirement for graduation to those set out in the noted college bulletin, and that its application was “ malicious, arbitrary and capricious ”.
This argument ignores the standards of “ Scholastic Requirements ” set out in the student information booklet issued to each student at registration each term. Paragraph 4 of the “ Scholastic Requirements ” standards states: “ Although a weighted average of 70% is passing, the determination of whether or not a -student has done satisfactory or unsatisfactory work is not based on any set percentile grade but rather upon the appraisal of the student’s record and potential. The New York State Veterinary College has a responsibility to maintain a standard of excellence determined by the faculty(Emphasis supplied.) This is a clear reservation of a right of review.
*477 The affidavit of Dean Poppensiek points out that a quality point value of 1.7 is ,the equivalent of 70%. Mr. Balogun’s senior year quality point arithmetic average was 1.516.
As also noted in the affidavit of Dr. Danks, the junior and senior years’ curricula deal with acquiring the type of knowledge, information and skills (the clinical ones) required of practicing veterinarians in their daily rounds. And it was in these areas that student Balogun was most deficient; the records show that in the academic and basic fields, as opposed to the clinical areas, he could be classed as a good student. But this serves only to illustrate the necessity for the veterinary college faculty to review student performance and potential in order to maintain a minimum standard of excellence for its graduates.
Regular student review procedures existed and exist to this end and, without refutation, Dr. Danks’ affidavit states “ this normal procedure for academic rating of students was employed with respect to plaintiff and all other students in his class.” These review procedures involve a regular faculty class committee which functions in an advisory and recommendatory capacity to a committee of the body of the college faculty, in which final determination lies. These procedures and committee actions were fully applied to Mr. Balogun’s case.
Beyond the mere allegation, there is no showing that denial of plaintiff’s degree was arbitrary, malicious, capricious or in any way discriminatory. The unrefuted evidence is that standard procedures of review of academic achievement and professional potential were equally applied to all members of Mr. Balogun’s class and that the decision to withhold a degree from him resulted from the rightful exercise of honest discretion based upon justifying facts. Abuse of discretion or gross error has not been shown.
In a statement (labeled an affidavit) signed by Mr. Balogun and witnessed on July 15, 1971 he states “my character was assassinated by Dr. A, G-. Danks ” in that he falsely “ called me a Communist ” and further that Dean Poppensiek had been told that Mr. Balogun had engaged in interracial dating. Mr. Balogun also contends that the action in denying him a degree was vindictive and would not have occurred if he were not black and that it was the result of a conspiracy between Dr. Danks and Dean Poppensiek. These are conclusionary allegations. “ Suspicion, surmise and accusation are not enough ” to defeat a motion for summary judgment. (Schapiro v. Health Ins. Plan, 7 N Y 2d 56, 64.)
This is not a case where the court may further review the discretionary acts of the college’s academic committee or sub *478 stitute its judgment for theirs. (See Edde v. Columbia Univ., 8 Misc 2d 795, affd. no opn. 6 A D 2d 780, app. dsmd. 5 N Y 2d 881; cert. den. 359 U. S. 956; Bower v. O’Reilly, 65 Misc 2d 578.)
Summary judgment dismissing the complaint on the merits should he granted.
No motion costs are awarded. No costs or disbursements may be taxed upon entry of judgment. (CPLR 8108; 8301, subd. Co].)