OPINION OF THE COURT
George Beisheim, Jr., J.
The present proceeding has been instituted by petitioner pursuant to CPLR 7804 (subd [c]) for a judgment annulling her academic dismissal from respondent medical school. The respondent previously moved to dismiss the petition, which motion, upon reargument, after three days of hearing, was denied by decision of this court dated November 16, 1981 (Matter of Heisler, NYLJ, Nov. 30,1981, p 16, col 6).
Respondent served an answer to the petition on or about December 18, 1981, constituting a general denial and containing an alleged “first complete defense” that the petition fails to state a cause of action.
Thereafter, the attorneys for the respective parties entered into a stipulation under date of December 21, 1981, agreeing that the transcript of the hearing conducted by this court on July 30, August 13 and August 14, 1981, be deemed to be the trial transcript of this proceeding and that this court might decide the entire matter on the basis of the trial transcript and the accompanying exhibits which had been admitted into evidence.
*728 At the request of the attorneys for the respective parties, this court signed “So Ordered” at the end of the stipulation.
In the decision dated November 16, 1981, which is hereby incorporated into this decision, the testimony of nine witnesses was reviewed in detail and cases involving academic dismissals from educational institutions were examined with respect to their relation to the instant case. In view of the length of that decision, and in the interests of clarity, a brief review of the decision will precede this court’s findings on the issues of fact which the court found to have been raised by conflicting testimony at the three-day hearing.
Petitioner was accepted by the respondent medical college on August 28, 1978, for the academic year commencing September 2, at a time when it was too late for her to find campus housing or to secure a student loan. In effect, she was compelled to live at home for the first time in four years, where serious family problems precluded proper attention to studies. At the conclusion of the academic year, she was dismissed by the respondent’s promotions committee upon the basis that she had failed four courses, and her application to the respondent’s appeals committee to be afforded the opportunity to repeat the year was rejected. This treatment differed from the treatment accorded the only three members of petitioner’s academic class who had equally bad or worse records. Two of these students were permitted to repeat the year by the promotions committee. The third student was permitted to do so by the appeals committee, after having been dismissed by the promotions committee. The record discloses that one of the three students, who failed four courses, had been permitted to repeat the year, apparently on the basis that a poor academic record resulted from not having lived away from home before enrolling in medical school. A second student, who failed five courses, was permitted to repeat the academic year by reason of the appeals committee’s acceptance of an explanation that, at the time of admission, uncertainty as to whether a medical career was based upon a real desire to become a physician or upon the fact that both parents were alumni of the respondent institution had caused academic failure. With respect to the third *729 student, a campus resident who failed five courses, the respondent appointed a special committee to investigate a claim that a difficult family situation had had an unfortunate bearing on the student’s academic performance. For some reason, not explained to the satisfaction of this court, respondent did not seem to take seriously either petitioner’s statements with respect to her severe family problems reported to certain faculty members throughout the academic year, or her letter addressed to the appeals committee, wherein she set forth the detailed arrangements she had made to avoid the problems which had had such a devastating effect upon her ability to study.
In arriving at the decision of November 16, 1981, this court examined the relatively small number of cases involving academic expulsions in which the facts upon which the court’s determinations were based were set forth with some degree of particularity.
Cases involving students who had rejected an academic institution’s offer of a “second chance” were examined (Matter of Olsson v Board of Higher Educ., 49 NY2d 408; Matter of Edde v Columbia Univ. in City of N. Y., 8 Misc 2d 795, affd 6 AD2d 780, opp dsmd 5 NY2d 881, cert den 359 US 956; Schnapper v Trustees of Columbia Univ., NYLJ, Jan. 8,1979, p 11, col 6). Cases wherein students had failed to meet academic standards after having been accorded a “second chance” were examined as well (Matter of Sofair v State Univ. of N. Y. Upstate Med. Center Coll, of Medicine, 44 NY2d 475; Abrams v New School for Social Research, 50 AD2d 778, affd 40 NY2d 961; Matter of Dunmore, NYLJ, Aug. 19, 1976, p 5, col 1). All of the foregoing cases were distinguished from the case under consideration, as was a case wherein the student was not foreclosed from achieving academic goals by reason of the dismissal (Matter of Macintosh v Borough of Manhattan Community Coll., 78 AD2d 839) and a case in which the student had not, in fact, been expelled (Matter of Bonwit v Albany Med. Center School of Nursing, 77 Misc 2d 269). Cases more akin to the one under consideration, where student claims of unfair treatment amounting to a lack of good faith on the part of the academic institution were studied closely (Board of Curators of Univ. of Mo. v Horowitz, 435 US 78; Shields v *730 School of Law of Hofstra Univ., 77 AD2d 867; Mewshaw v Brooklyn Law School, 53 AD2d 604; Matter of Lesser v Board of Educ., 18 AD2d 388; Balogun v Cornell Univ., 70 Misc 2d 474; Matter of Dunmore, supra). In all of these cases, it was apparent to this court that student claims of unfair treatment were unsubstantiated.
This court, in its decision of November 16, 1981, found that petitioner raised issues of fact with respect to whether respondent’s published guidelines did, in fact, constitute the administrative rules of the institution, and whether the respondent’s procedures for review were equally applied to all members of her class, which had been raised by conflicting testimony at the hearing.
Therefore, the first factual issue to be addressed in rendering this decision is whether the respondent did, in fact, follow its own rules. The record reveals that the respondent’s guidelines for promotion and dismissal provide, inter alla, for mandatory dismissal under the following circumstances: “Students who fail any four courses in the first year or who fail any three courses in any one of the subsequént years, or who have failed a total of any six courses throughout their medical school career are considered by the Faculty to be unable to meet minimum academic standards required for the medical profession and will be dismissed from the Medical School.” Despite these rules, the record discloses that three of the four students who failed four or more courses during the year in which petitioner was in attendance at the respondent institution were permitted to repeat the academic year by the promotions or the appeals committee. Thus, from the record of the hearing or “trial”, the court finds that the aforesaid rule or guideline was breached by the respondent. This court holds that this constituted an arbitrary and capricious act on the part of the respondent institution (Tedeschi v Wagner Coll., 49 NY2d 652, 662).
The second question of fact to be determined by this court is whether respondent’s procedures and standards for review were equally applied to all members of the petitioner’s academic class.
It is clear from the record that a procedure existed within the institution whereby the promotions committee, could *731 appoint a subcommittee to investigate student claims that family problems precluded proper attention to studies. The failure to afford petitioner the benefits of this procedure .constituted an abuse of discretion (see Tedeschi v Wagner Coll., supra, p 660). Furthermore, it is clear under all of the circumstances disclosed in the record that respondent failed to apply its procedures and standards for review equally to all members of petitioner’s class (Balogun v Cornell Univ., supra, p 477). Clearly, petitioner was afforded a lesser degree of consideration than the other similarly situated members of her class whose patently weaker excuses for academic failure resulted in their being given a “second chance”. (Cf. Board of Curators of Univ. of Mo. v Horowitz, supra, p 92, ns 7, 8.)
This court does not criticize, per se, the actions of the respondent in making exceptions to its rules. Practically speaking, granting a second chance to a student carefully chosen by a select institution a year earlier, who encountered unusual, unforeseen and unavoidable problems, may not only be compassionate, but an exercise of good judgment. However, when a school deviates from its rules and makes exceptions thereto, it must employ some understandable, unified standards. The failure to establish and maintain such standards constitutes an impermissible abuse of discretion and a lack of good faith on the part of the educational institution.
Accordingly, the court finds that petitioner is entitled to a judgment annulling petitioner’s academic dismissal from the respondent medical college and directing said respondent to permit her to re-enter the school for the school year commencing September, 1982.