Michael PERETTI, Henry Hodnik, Rod Utigard, Carter Jensen, Michael Devoe, Steven Rezin, Robert Rasmussen, Fred Wittlake, James Bowman, Ernest Nevin, Paul Ward, Doug Kobs, Rick Berg, Tim Clark, and Ron Winterroud, Plaintiffs,

v.

The STATE OF MONTANA, the Board of Public Education and its members, the State Board of Education and its members, Georgia Ruth Rice, the Superintendent of Public Instruction, and the Missoula County High School Board of Trustees and its members, Defendants.

No. CV 77–66–M.

United States District Court,
D. Montana,
Missoula Division.

Feb. 7, 1979.

As Amended Feb. 22, 1979.

Richard Ranney, Missoula, Mont., George, Williams and Benn, for plaintiffs.

Robert E. Sheridan, Jr., Missoula, Mont., for Missoula County High Schoool Bd. of Trustees.

O'Leary & Atkins, Helena, Mont., for State defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Plaintiffs bring this action for damages, alleging that the aviation technology course, for which they had enrolled and in which they had completed three out of six quarters, was unlawfully terminated to their damage.

The State of Montana maintains five vocational education centers, one of which, the Missoula Technical Center (Center), is located in Missoula.

The vocational education centers are financed by state appropriations, which may be supplemented by permissive county levies. In Missoula, the Board of Trustees of Missoula County High School provides the day-to-day administration of the Center, but the overall control of the budget and the curriculum is vested in the Board of Public Education (Board). Mont.Code Ann. § 20–7–324.

In the fall of 1976 the plaintiffs enrolled in the aviation technology program offered by the Center. All of the literature published by the Center described the aviation course as one leading to a private pilot's license and to employment by the general aviation industry. The curriculum described in detail the courses offered, which included both classroom and actual flight training, extending over six quarters. All courses listed were required courses.

In 1975 the legislature appropriated $7,862,109.00 for the five vocational education centers. In 1977 the legislature appropriated $7,042,721.00, or $819,388.00 less than in 1975. This cut in appropriations required that some adjustment be made in the programs offered, and the Board elimi-

nated the aviation technology program. Other alternatives, such as the elimination of programs which did not extend beyond one year, were available, but because the per-pupil cost of aviation technology was higher than any other program, the Board decided to eliminate it. As a result, the plaintiffs could not complete their training. Since the program was integrated, there were no credits earned which readily could be transferred, and plaintiffs were left with three quarters' training of dubious value to them.

For the purposes of determining whether there is jurisdiction and, if so, whether plaintiffs are entitled to relief, it is necessary to examine the relationship between a public post-secondary educational institution and a student. There seems to be almost no dissent from the proposition that the relationship is contractual in nature.[1] This contractual relationship is summarized in the Notre Dame Law Journal as follows:

This contract is conceived of as one by which the student agrees to pay all required fees, maintain the prescribed level of academic achievement, and observe the school's disciplinary regulations, in return for which the school agrees to allow the student to pursue his course of studies and be granted a diploma upon the successful completion thereof. Since a formal contract is rarely prepared, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implication. This contract has been upheld against attacks based upon lack of consideration, the statute of frauds, and lack of mutuality of obligation.

1. It is true that there has been scholarly criticism of the application of the law of contracts to university-student conflicts, but these criticisms are not so much directed at the fact of the contractual relationship as to the fact that the courts have used the law of contracts to justify the expulsion of students without applying certain contract doctrines which would

have ameliorated the harsh results obtained. *See* Comment, *Private Government on the Campus—Judicial Review of University Expulsions,* 72 Yale L.J. 1362, 1377 (1962); Note, *Judicial Review of the University-Student Relationship: Expulsion and Governance,* 26 Stan. L.R. 95, 104 (1973).

Note, *Expulsion of College and Professional Students—Rights and Remedies,* 38 Notre Dame L.J. 174, 183 (1962) (footnotes omitted). *Accord, Krasnow v. Virginia Polytechnic Institute,* 414 F.Supp. 55 (W.D.Va. 1976), *aff'd,* 551 F.2d 591 (4th Cir. 1977); *Papish v. Board of Curators of University of Missouri,* 331 F.Supp. 1321 (W.D.Mo. 1971), *aff'd,* 464 F.2d 136 (8th Cir. 1972); *Andersen v. Regents of the University of California,* 22 Cal.App.3d 763, 99 Cal.Rptr. 531 (1972); *Zumbrun v. University of Southern California,* 25 Cal.App.3d 1, 101 Cal.Rptr. 499 (1972); *Galton v. College of Pharmaceutical Sciences,* 70 Misc.2d 12, 332 N.Y.S.2d 909 (Sup.Ct.1972); *Balogun v. Cornell University,* 70 Misc.2d 474, 333 N.Y.S.2d 838 (Sup.Ct.1971); *Drucker v. New York University,* 59 Misc.2d 789, 300 N.Y.S.2d 749 (1969); *University of Miami v. Militana,* 184 So.2d 701 (Fla.App.1966); *Carr v. St. John's University,* 17 A.D.2d 632, 231 N.Y.S.2d 410, *aff'd mem.,* 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962); *Booker v. Grand Rapids Medical College,* 156 Mich. 95, 120 N.W. 589 (1909); *Goldstein v. New York University,* 76 App.Div. 80, 78 N.Y.S. 739 (1902); *Contract Law and the Student-University Relationship,* 48 Ind.L.J. 253, 255 (1972). *See State ex rel. Ingersoll,* 81 Mont. 200, 221, 263 P. 433 (1928) (Galen, J., dissenting).[2]

■ Only that which is reasonable may be implied. Certainly in the period of time between a student's matriculation and graduation, an educational institution, which is a living, changing thing, may not reasonably be expected to remain static; and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract between the school and the student. Here, however, from all that was said by the Center, any student enrolling would know that he was required to dedicate six consecutive quarters to the aviation technology course, that any time spent short of two years would essentially be wasted, and, conversely, the Center would reasonably know that a student enrolling and spending three quarters would expect an opportunity to complete the remaining three quarters. It is not necessary in this case to decide what might have been reasonably implied had the aviation technology course been a standard course leading to a standard degree and had credits been given which would be honored by institutions within or without the state offering similar standard courses and degrees. Those facts are not present here. It is the ruling, therefore, that, as between the Board and the plaintiffs here, there was an implied contract that if the plaintiffs enrolled in the aviation technology course, they would be given an opportunity to complete the training period of six quarters and receive a diploma evidencing such completion.

■ A right arising out of an implied contract is within the 14th amendment's protection of life and property. "Without doubt, [liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract . . ." (*Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)), and the contract protected may be either express or implied. In *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), the Court explained:

For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be "implied." 3 A. Corbin on Contracts §§ 561–572A (1960). Explicit contractual provisions may be supplemented by other agreements implied from "the promisor's words and conduct in the light of the surrounding circumstances." *Id.,* at § 562. And, "[t]he meaning of [the promisor's] words and acts is found by relating them to the usage of the past." *Ibid.*

---

**2.** The holding that plaintiffs have a right based on contract makes unnecessary any discussion of plaintiffs' privileges, if any, to post-secondary education and the extent to which such privileges may be constitutionally protected.

Mont.Code Ann. § 18–1–404 makes the discussion of any differences between contracts of private and state-supported institutions unnecessary.

Once a right comes into existence under law, a state may not destroy the right by an act of the legislature repealing the law which formed the basis of the right (*Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934)), or, as in this case, by an act of an administrative body making the exercise of the right impossible.

■ Hence, there was a violation of a right protected by the Constitution of the United States, a federal question exists, and, since the amount in controversy is alleged to be in excess of the jurisdictional amount, jurisdiction exists under 28 U.S.C. § 1331.

The State urges that the court may not entertain this action under the 11th amendment. Despite its language, that amendment is held to bar actions by a citizen of a state against a state in the absence of a waiver. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Doe v. Montana,* 457 F.Supp. 389 (D.Mont.1978).

■ In 1972 the people of Montana adopted a constitution, article 2, section 18, of which was amended in 1974 to read: "The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property." Does that language constitute a waiver of immunity in this case? At the core of the action is the destruction of plaintiffs' contractual rights and any damage would be measured on the basis of the injuries flowing from the deprivation of contractual rights. It is true, of course, that the action here is one grounded in a deprival of 14th amendment rights, and perhaps in some sense it is not an action for injury to property. Since, however, it is the contract right which the Constitution protects from wrongs, it does not do violence to article 2, section 18, of the Montana Consti-

tution to hold that this is an action for injury to property within the meaning of the constitution.[3] This result seems to be in accord with the philosophy expressed in *Noll v. City of Bozeman,* 166 Mont. 504, 534 P.2d 880 (1975), where the Montana Supreme Court construed similar language appearing in article 2, section 18, of the Montana Constitution, as it was initially adopted. The court, quoting from the proceedings of the constitutional convention,[4] held, at 882, that "[t]he inescapable fact is that the government no longer enjoys protection from suit under the 1972 constitutional mandate."

■ Defendants claim that, since the contract here involved was not to be performed within one year, it is barred by Mont.Code Ann. § 28–2–903, the Montana statute of frauds relating to contracts not to be performed in one year. Defendants' failure to mention the statute of frauds in the pleadings as required by Fed.R.Civ.P. 8(c) precludes its consideration.[5]

The action is dismissed as to the State Board of Education and its members, Georgia Ruth Rice, Superintendent of Public Instruction, and the Missoula County Board of Trustees and its members. It is not shown that these defendants either created or terminated any rights which plaintiffs may have.

■ IT IS ORDERED that the State of Montana is liable to each of the plaintiffs in such amounts as they may show they have been damaged.

It is the opinion of the court that this opinion involves controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal from this order may materially advance the termination of this litigation.

---

3. A similar result could be reached on the basis of Mont.Code Ann. § 18–1–404.

4. "A reading of the record of the 1972 Constitutional Convention clearly indicates the framers intended to provide redress for all persons, whether victims of governmental or private torts." *Noll v. City of Bozeman,* 166 Mont. 504, 534 P.2d 880, 882 (1975).

5. The court, by mentioning the statute, does not infer anything with respect to whether there are writings constituting sufficient memoranda, whether there is part performance, or whether, if official publications are sufficient to create a constitutionally-protected right, that right might be cut off by the application of a state statute of frauds.