725 P.2d 155

**Russell WICKSTROM, Kenneth Hash, Bruce Bennett and Kevin Ryan, Plaintiffs-Appellants,**

v.

**NORTH IDAHO COLLEGE and Charles D. Chastain, Defendants-Respondents.**

**No. 16202.**

Supreme Court of Idaho.

Aug. 25, 1986.

Everett D. Hofmeister, Coeur d'Alene, for plaintiffs-appellants.

James T. Knudson, Coeur d'Alene, for defendants-respondents.

HUNTLEY, Justice.

This proceeding arises from the trial court's grant of respondent's motion for summary judgment on grounds that appellants' claims against North Idaho College and one of its instructors, Charles D. Chastain, were tort claims barred by applicable provisions of the Idaho Tort Claims Act. We are called upon to decide whether, as found by the trial court, appellants' claims lay in tort and were, consequently, barred by provisions of the Idaho Tort Claims Act, or whether such claims also state a possible cause of action in contract.

Russell Wickstrom, Kenneth Hash, Bruce Bennett and Kevin Ryan enrolled in a "Maintenance Mechanic (Millwright)" course at North Idaho College, taught by Charles D. Chastain. The school bulletin averred that, upon successful completion of the course, graduates would be qualified for employment as "entry level journeymen." However, upon their successful completion of the course, appellants discovered that they were not qualified as entry-level journeymen.

After this discovery, plaintiffs sought legal advice, and a letter of demand, dated August 21, 1984, was sent to North Idaho College detailing appellants' dissatisfaction with the course and their intent to take legal action if the college did not compensate them for sacrifices made in attending the course for eleven months. The letter, however, failed to state appellants' names and addresses, the amount of any damages they had incurred and the nature of any injuries suffered.

Appellants filed a complaint December 3, 1984, alleging misrepresentation and that instructor Chastain "willfully, knowingly and intentionally failed, refused and omitted to properly and adequately instruct ... the matters set forth ... with the consent and knowledge of the defendant college." They sought damages for lost wages, fringe benefits and anticipated increased earnings, general and punitive damages and attorney fees and costs.

The trial court treated respondents' motion to dismiss as one for summary judgment and granted same on grounds that the complaint had only stated a cause of action in tort. The trial court rejected appellants' argument that a claim in contract had been stated, ruling that "misfeasance" rather than "nonfeasance" was at the core of appellants' claims, and therefore, the cause of action was in tort. Additionally, the court noted that the damages sought reflected that the cause of action lay in tort rather than contract, as neither rescission nor restitution were requested.

The trial court further held that the Idaho Tort Claims Act applied and that its notice provision (I.C. § 6–907) had not been complied with. Accordingly, summary judgment was granted.

We first address the issue of whether appellants claims are, in fact, barred by provisions of the Idaho Tort Claims Act. Secondly, we discuss whether the claims could have stated a cause of action in contract.

## I. THE TORT CLAIM

As part of a junior college district, North Idaho College may sue and be sued in its own name (I.C. § 33–2108). As a governmental entity, the Idaho Tort Claims Act serves as a limitation on its potential liability. (I.C. § 6–901 et seq.).

In the instant case, however, any discussion of the substance or validity of appellants' tort claim against North Idaho College is moot, given that appellants have failed to comply with the notice provision of the I.T.C.A. (I.C. § 6–907). I.C. § 6–907 provides in relevant part:

> **6–907. Contents of claims—Filing by agent or attorney—Effect of inaccuracies.**—All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed, together with a statement of the actual

452

residence of the claimant at the time of presenting and filing the claim and for a period of six (6) months immediately prior to the time the claim arose.

■ The demand letter of August 21, 1984 failed to serve as notice of a claim pursuant to the I.T.C.A., since it failed to state the names and addresses of the claimants, the amounts of claimed damages and the nature of the injury claimed. The claim is, therefore, barred. I.C. § 6–907; *Huff v. Uhl,* 103 Idaho 274, 647 P.2d 730 (1982).

It should be noted, however, that appellants admitted at oral argument that the letter of August 21, 1984 was never intended to constitute notice of a tort claim. Rather, appellants contend that their cause of action lies in contract. We turn, then, to that issue.

## II. THE CONTRACT CLAIM

It is by now well-settled that the principal relationship between a college and its students is contractual.

> [I]t is necessary to examine the relationship between a public post-secondary educational institution and a student. There seems to be almost no dissent from the proposition that the relationship is contractual in nature. Peretti v. State of Montana, 464 F.Supp. 784, 786 (D.Mont.1979) (rev'd on other grounds, Montana v. Peretti, 661 F.2d 756 (9th Cir.1981)).

The court in *Peretti* goes on to explain: Since a formal contract is rarely prepared, the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms by implication. *Peretti,* 464 F.Supp. at 786.

*See also, Ward v. Washington State University,* 39 Wash.App. 630, 695 P.2d 133, 135 (1985); *Marquez v. University of Washington,* 32 Wash.App. 302, 648 P.2d 94 (1982); *Zumbrun v. University of Southern California,* 25 Cal.App.3d 1, 603 P.2d 454, 101 Cal.Rptr. 499 (1972).

In presenting the issue of whether a contract claim existed against North Idaho College before the trial court, appellants cited *Zumbrun v. University of Southern California,* 25 Cal.App.3d 1, 101 Cal.Rptr. 499, 603 P.2d 454 (1972). In *Zumbrun,* the court held that the contract between the university and student had been breached where an instructor had failed to complete instruction of a course in protest of various university policies. No final exam was given, and all students were passed and given grades of "B." Plaintiff contended that she had not been given the educational background promised upon completion of the course.

In finding that no contract claim could be made in the instant case, the trial court here distinguished *Zumbrun* by characterizing the actions of the professor in that case as "nonfeasance," whereas the alleged faulty instruction of Instructor Chastain constituted an allegation of "misfeasance," and was, therefore, more akin to an alleged tort violation.

Such a characterization misses the point. A breach of contract may occur through affirmative noncompliance with the terms of the contract (i.e. "misfeasance"), as well as by a failure to perform at all (i.e. "nonfeasance").

■ It is clear, then, that a valid cause of action in contract could exist if the terms of the implied contract between appellants and North Idaho College were not complied with. For instance, if certain fundamentals of the course necessary to attaining qualification as an "entry-level journeyman" were not even presented in the course, such could be a breach of the implied contract between the college and the students in the "Maintenance Mechanic (Millwright)" course.[1] In the case at hand,

1. Such fundamentals would include the number of days/hours required to complete a prescribed course of study and other *objective* criteria in a course's presentation. Such a failure to provide objective fundamentals, which could result in a breach of the implied contract between

however, neither the record nor the complaint disclose the facts by which appellants contend the college-student contract was breached. There is no mention of how the course might have failed to comply with the terms of the contract as found in the school bulletin or catalogue.

■ It is well settled that, in the interest of justice, courts should favor liberal grants of leave to amend, (I.R.C.P. 15(a); *Markstaller v. Markstaller*, 80 Idaho 129, 326 P.2d 994 (1958). In the instant case, appellants did not file for leave to amend their complaint, asserting their complaint adequately stated a cause of action in contract. Failure to apply for leave to amend is not, however, fatal, but this Court may limit the possible amendments to appellant's complaint. *General Hospital v. City of Grangeville*, 69 Idaho 6, 201 P.2d 750 (1949).

Accordingly, we grant appellants fourteen (14) days in which to file an amended complaint, but limit such grant only to an opportunity to state a cause of action in contract, provided such exists.

For the reasons stated, the trial court's ruling that appellant's claims in tort are barred by applicable provisions of the Idaho Tort Claims Act is affirmed. Its ruling that appellants did not state a cause of action in contract is affirmed, with appellants nevertheless being granted fourteen (14) days following remittitur in which to file an amended complaint in an attempt to state a cause of action in contract. Costs to appellants. No attorney fees on appeal.

BAKES and BISTLINE, JJ., concur.

DONALDSON, C.J., concurs in part, dissents in part.

BAKES, Justice, concurring specially:

I have the same concerns with regard to the so-called "educational malpractice" cause of action as is expressed by Chief Justice Donaldson in his dissenting opinion

college and student, would not implicate the policy concerns regarding the viability of contract claims predicated upon the more subjective nuances of the teacher-student relationship

as to Part II. However, the opinion of the Court, in footnote 1, specifically rejects the notion that Idaho recognizes such a cause of action and, accordingly, the Chief Justice's concern, while well expressed, is unnecessary in view of the express rejection in the majority opinion of the so-called "educational malpractice" cause of action.

The opinion of Chief Justice Donaldson does "recognize that there may be narrow circumstances where an action for breach of contract may lie, such as where an educational institution accepts a student's tuition and thereafter provides no educational services at all. Similarly, if the contract—whether express or implied—with the school provides for certain specified services, such as designated number of days or hours of instruction, and the school fails to meet this obligation, then an action for a breach of contract may be available." Accordingly, the Court appears unanimous that, at least under certain narrow circumstances, a cause of action for breach of contract will lie against an educational institution for failure to provide educational services. However, as the Court's opinion points out, in the case at hand "neither the record nor the complaint disclosed the facts by which appellants contend the college-student contract was breached. There is no mention of how the course might have failed to comply with the terms of the contract as found in the school bulletin or catalog." Accordingly, today's case is totally inappropriate to determine what the "narrow circumstances" may be whereby an action for breach of contract may lie against an educational institution. To attempt to set out the factual conditions for such a cause of action in this case would be pure *dicta*. Accordingly, I join the Court's opinion, noting that there is very little difference between it and the dissenting opinion of Chief Justice Donaldson, except that the majority opinion would allow the plaintiff the opportunity to file an amended

(i.e. methodology of teaching and other matters usually raised under the rubric, "educational malpractice," which cause of action Idaho does not recognize.)

complaint in an effort to allege a cause of action for breach of contract.

DONALDSON, Chief Justice, dissenting in Part II.

I dissent to the majority's analysis and conclusion in Part II of its opinion which purports to allow the plaintiffs to assert a cause of action against the defendants, their instructor and the college, based on an alleged failure to adequately educate the plaintiffs. Whether characterized as being tort or in contract, the factual basis of the plaintiff's cause of action is the same and is manifestly against public policy.

It is clear from a review of case law on this issue that courts have uniformly refused, based on public policy considerations, to enter the classroom to determine claims based upon what has generally been characterized as "educational malpractice." *Paladino v. Adelphi University*, 89 A.D.2d 85, 454 N.Y.S.2d 868 (1982); *Hunter v. Board of Ed. of Montgomery County*, 292 Md. 481, 439 A.2d 582 (1982); *D.S.W. v. Fairbanks No. Star Bor. Sch. Dist.*, 628 P.2d 554 (Alaska 1981); *Helm v. Professional Children's School*, 103 Misc.2d 1053, 431 N.Y.S.2d 246 (1980); *Loughran v. Flanders*, 470 F.Supp. 110 (D.Conn. 1979); *Smith v. Alameda Cty. Soc. Serv. Agency*, 90 Cal.App.3d 929, 153 Cal.Rptr. 712 (1979); *Hoffman v. Board of Ed. of City of N.Y.*, 49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317 (1979); *Donohue v. Copiague Union Free School Dist.*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979); *Peter W. v. San Francisco Unified School Dist.*, 60 Cal.App.3d 814, 131 Cal.Rptr. 854 (1976).

The federal court in *Loughran* stated that a claim for damages similar to that asserted by the plaintiffs in the present case "necessarily hinges upon questions of methodology and educational priorities, issues not appropriate for resolution by this court." *Loughran, supra* at 115. The court in *Hunter* noted that were the plaintiffs allowed to proceed on their claim, they would, in effect, position the courts as overseerers of both the day-to-day operation of our educational process, as well as the formulation of its governing policies. *Hunter, supra*, 292 Md. at 486-88, 439 A.2d at 585. "This responsibility we loathe to impose on our courts," noted the Maryland Court. *Id.*

A unanimous Alaska court noted in 1981 that:

"[i]n particular we think that the remedy of money damages is inappropriate as a remedy for one who has been a victim of errors made during his or her education. The level of success which might have been achieved had the mistakes not been made will, we believe, be necessarily incapable of assessment, rendering legal cause an imponderable which is beyond the ability of courts to deal with in a reasoned way." *D.S.W., supra* at 556.

In *Donohue*, the New York Court reasoned that "[r]ecognition in the courts of this cause of action would constitute blatant interference with the responsibility for administration of the public school system lodged by constitution and statute in the school administrative agencies." *Donohue, supra*, 47 N.Y.2d at 445, 418 N.Y.S.2d at 378, 391 N.E.2d at 1354; *James v. Board of Educ.*, 42 N.Y.2d 357, 367, 397 N.Y.S.2d 934, 942, 366 N.E.2d 1291, 1298 (1977). The court in *Hoffman* noted that it was well settled that a court may not substitute its judgment or the judgment of a jury, for the professional judgment of educators and government officials actually engaged in the complex process of educating thousands of pupils in the public schools. *Hoffman, supra*, 49 N.Y.2d at 125-26, 424 N.Y.S.2d at 379, 400 N.E.2d at 320. "Clearly, each and every time a student fails to progress academically, it can be argued that he or she would have done better and received a greater benefit if another educational approach or diagnostic tool had been utilized," but the court system is not the proper forum to test the validity of these educational decisions. *Id.* at 127, 424 N.Y.S.2d at 379, 400 N.E.2d at 320.

The court in *Paladino*, after citing similar propositions from case law on this is-

sue, then emphasized that the soundness of this policy of non-interference is equally applicable whether the action is brought against a public or a private institution, and *whether it is formulated in tort or in contract. Paladino, supra,* 89 A.D.2d at 87–91, 454 N.Y.S.2d at 871–72. Similarly, the court in *Hunter* concluded that "The uncertainty of damages, the difficulty in determining legal cause, the public policy factors precluding negligence claims remains true whether the allegations state breach of contract or tort." *Hunter, supra,* 292 Md. at 489–90, n. 5, 439 A.2d at 586 n. 5.

In *Paladino,* the suit was formulated as a breach of contract claim, much as the majority in the present case would allow the plaintiffs to formulate their claim. Yet, the court in *Paladino* emphasized that as with a claim formulated in tort:

"[w]here the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction. It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution. There is nothing novel about a contract action that would permit for judicial intervention into the process of learning. For in effect, the claim still requires judicial displacement of complex educational determinations made by those charged with the responsibility to instruct the child. . . .

" . . . .

"Professional educators—not judges—are charged with the responsibility for determining the method of learning that should be pursued for their students. When the intended results are not obtained, it is the educational community—and not the judiciary—that must resolve the problem. For, in reality, the soundness of educational methodology is always subject to question and a court ought not in hindsight, substitute its notions as to what would have been a better course of instruction to follow for a particular pupil. These are determina-

tions that are to be made by educators and, though they are capable of error, their integrity ought not be subject to judicial inquiry." *Paladino, supra,* 89 A.D.2d at 89–93, 454 N.Y.S.2d at 872–73.

The reasoning of the courts cited above is sound and recognizes the serious public policy implications in extending liability to educators and educational institutions for allegedly failing to adequately educate their students. The majority, however, ignores critical public policy concerns implicated by the facts of this case.

I fully recognize that there may be narrow circumstances where an action for breach of contract may lie, such as where an educational institution accepts a student's tuition and thereafter provides no educational services at all. Similarly, if the contract—whether express or implied—with the school provides for certain specified services, such as a designated number of days or hours of instruction, and the school fails to meet this obligation, then an action for a breach of contract may be available. *See e.g., Peretti v. Montana,* 464 F.Supp. 784 (D.Mont.1979); *Zumbrun v. University of Southern California,* 25 Cal.App.3d 1, 101 Cal.Rptr. 499 (1972). These are conditions of the agreement between a student and the school that do not relate to the adequacy of the instruction, and hence, are capable of evaluation and remedy in the courts based on contract principles. However, in the present case, as in the *Paladino* case, the action the plaintiffs will be allowed to plead is the defendants' failure to educate the plaintiffs. The asserted breach is predicated upon the quality and the adequacy of the course of instruction. The claim requires the fact finder to enter the classroom and determine whether or not the judgments, curricula and teaching styles of the professional educators involved were deficient. Thus, the plaintiff's claims require an analysis of the educational function itself. The quality of education and the qualifications of teachers employed by the school are concerns not for the courts, but rather for the local and state boards of education

governing the schools. *Paladino, supra,* 89 A.D.2d 91–93, 454 N.Y.S.2d at 873.

The case relied upon by the majority, *Peretti, supra,* is clearly distinguishable from the present case in that it does not involve an evaluation of the quality of education provided by an educational institution. Rather, *Peretti* involved an action brought by students who had enrolled in an aviation course which the state unlawfully terminated after the students had completed only three out of six quarters. Because the program was integrated, the students could not complete their training and were left with three quarters of training which were of little use without the rest of the training. The school publication on the course formed the measurable boundaries of an implied contract whereby if the plaintiffs enrolled in the aviation course they would be given the opportunity to complete the full six quarters required.

The *Peretti* case *did not* deal in any way with the adequacy of the course, its materials, or instructors to prepare a student who completed the six quarters to be a qualified aviation technician. The case simply recognized that the students had a right to the full six quarters of the course when they enrolled in the first three quarters. The present case *does* deal with the adequacy of the course the plaintiffs took to educate them as mechanics. Judicial inquiry into this case would involve the very public policy concerns noted above, which the *Peretti* case did not need to deal with because those concerns were not implicated by its holding.

Furthermore, all of the other citations made by the majority do not support its proposition permitting a cause of action against a school for failing to adequately educate the plaintiffs, whether that cause of action is formulated in tort or in contract. The case of *Ward v. Washington State University,* 39 Wash.App. 630, 695 P.2d 133 (1985) simply holds that the plaintiff did not establish that he was "military personnel" pursuant to statute and the university bulletin which would have entitled him to resident-tuition privileges. The case

of *Marquez v. University of Washington,* 32 Wash.App. 302, 648 P.2d 94 (1982) actually seems to weaken the majority's position in the present case since it holds that a university which admitted a student under its affirmative action program was not obligated to provide adequate tutorial assistance to the student and could terminate that student's enrollment when he failed to maintain a minimum grade-point average.

In another case cited by the majority, *Zumbrun, supra,* the court found an instructor liable for simply terminating his course in protest of University policies toward the war in Southeast Asia. The plaintiff's action was aptly characterized as a breach of contract claim but, like the *Peretti* case, had nothing to do with the quality of the student's education. The student could maintain her action because the instructor failed to complete the number of days of instructions he had agreed to provide. Had the instructor completed the instruction as agreed, but allegedly done a poor job or used poor educational techniques, California case law clearly indicates that the student would not have been able to maintain a cause of action, even though she may have formulated it in terms of breach of contract. *Hoffman, supra; Peter W., supra.*

Thus, the majority provides *no* authority upon which it bases its conclusion that the plaintiffs may be able to pursue a contract claim in the courts based on the defendant's alleged failure to adequately educate them in the course they took. This is indeed a dangerous and unprecedented step for this Court to take; a step that I cannot in good conscience condone. This state has established many public avenues to resolve a wide range of problems that arise in our society. The problem of whether an educator is providing an adequate education to his students cannot be resolved through the court system in the same way that a dispute between a manufacturer and a purchaser of a defective product may be resolved. The legislature has established educational boards and agencies governing the quality of education in both public and

private institutions in this state. It is through those administrative channels that the plaintiffs should pursue their redress for their allegedly inadequate education at North Idaho College, and not through the court system as the majority would allow in this case. Therefore, I respectfully but firmly dissent to the majority's opinion in Part II.

SHEPARD, J., concurs.