[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
This case is one of four consolidated cases brought against the defendant, The Mead School for Human Development. In each case, the defendant filed a Motion to Strike the plaintiffs' amended complaints. Oral arguments on all four Motions to Strike CT Page 7497 were heard by this court on October 26, 1998.
In the present case, the plaintiffs, Harold G. Fletcher and Gail E. Fletcher bring this action individually and as parents, next friends and legal guardians of their minor son, Joel Fletcher, against the defendant, The Mead School for Human Development (Mead School, or Mead). The plaintiffs' amended complaint, dated March 4, 1998, sounds in negligence (count one), breach of contract (count two), fraudulent misrepresentation (count three), unjust enrichment (count four), and Connecticut Unfair Trade Practices Act (count five). The defendant filed a Motion to Strike all counts of the complaint, and the plaintiffs' prayer for prejudgment interest.
STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998). "[A] motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading at which the motion is directed."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495,497, 495 A.2d 286 (1985).
The facts alleged by the plaintiff and taken as true for purposes of this motion to strike can be summarized as follows. The plaintiffs' son, Joel Fletcher, attended the day care center operated by the defendant from 1985, when he was eighteen months old, through the spring of 1990, when he was six years old. Joel Fletcher was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) prior to starting first grade in September 1990. The defendant received a copy of the report containing Joel's diagnosis. Prior to September 1990, the plaintiffs inquired of the defendant regarding the suitability of the defendant's elementary school for their son in light of his needs. The defendant assured the plaintiffs that it could provide their son with an individualized program that would recognize and address his needs better than a special education facility. The CT Page 7498 plaintiffs enrolled their son in the defendant's elementary school, signed "enrollment contracts" and paid tuition for the school years 1990-91, 1991-92, 1992-93, 1993-94, and 1994-95. Each year, the defendant promoted the plaintiffs' son to the next grade level. From the fall of 1990 through the fall of 1994, the plaintiffs were given progress reports that indicated that their son was progressing academically in all areas.
In the spring of 1995, the plaintiffs received a progress report from their son's language arts teacher, which recommended that their son work with a private teacher specializing in helping kids learning to read. They also received, at that time, a report from their son's math teacher, which recommended that their son receive one-on-one tutoring in math in the following year. After receiving these two reports the plaintiffs had their son undergo a psycho-educational evaluation with a psychologist recommended by Norman Baron, the director of the Mead School. The psychologist's report restated the ADHD diagnosis, added the diagnoses of the learning disorders dyslexia, dysgraphia and dyscalculia, remarked that the gap between his intelligence and skills had widened since he had been tested previously, and specifically noted that his reading and math skills were several grade levels below his actual grade level. The plaintiffs withdrew their son from the Mead School after receiving the psychologist's report.
Count One
Count one sounds in negligence. In Count One, the plaintiffs allege that the defendant "breached its duty to properly educate Joel and its duty to provide [him] with the specialized teaching, tutoring, training, education and resources that he needed, and was therefore negligent . . . ." ¶ 24.
The plaintiffs allege ten ways that the defendant was negligent, including representing that it was equipped with the facilities and resources necessary to provide the plaintiffs' son with the special education that he needed; failing to diagnose their son's learning disabilities; promoting their son when his skills were below grade level; failing to provide educational services that would advance the academic skills of their son; and failing to support their son's academic strengths or to recognize and address his weaknesses. The defendant moves to strike count one on the ground that the Connecticut Supreme Court, like every other state court to consider an action based on negligent CT Page 7499 education or educational malpractice, has expressly declined to recognize such a cause of action.
The defendant cites Gupta v. New Britain Hospital,239 Conn. 574, 687 A.2d 111 (1996) in support of its contention that the Connecticut Supreme Court has rejected such a cause of action. The plaintiffs have not attempted to distinguish Gupta. Instead, they cite a Montana case, B.M. v. State, 649 P.2d 425
(Mont. 1982), to support a finding that Mead owed the plaintiffs' son a duty of care. In that case, the Montana Supreme Court found that the State, based on statutes governing special education, owed a duty of care to special education students. Id., 427. The plaintiffs suggest that Connecticut education statutes provide a framework for imposing that same duty of care in the present case.
The primary distinction between the Montana case and the present case is that the Montana case involved acts of public school officials and Montana's statutes and regulations imposed duties on such public school officials in regard to special education students. Id. In the present case, the defendant is a private school and Connecticut statutes regarding special education do not impose duties on private schools. General Statutes § 10-76a et seq.
In the present case, this court finds that the Supreme Court's decision in Gupta v. New Britain Hospital, supra,239 Conn. 574, controls this issue. In Gupta, the plaintiff was a physician who was dismissed from a residency training program at the defendant hospital. Id., 575. The plaintiff sued alleging that the defendant hospital violated his residency agreement and thereby breached his employment contract. Id. The trial court granted the hospital's motion for summary judgment after concluding that the residency agreement created an educational relationship rather than an employment relationship and that the plaintiff's dismissal was an academic decision, not an employment decision. Id., 580-81.
On appeal, the Supreme Court considered the plaintiff's claim that even if his dismissal was an academic decision, the hospital still breached its obligations under the residency contract by failing "to provide him a residency program that would reasonably and adequately train him.'" Id., 589-90. The Supreme Court concluded that "[w]here the essence of the complaint is that [an educational institution] breached its agreement by failing to CT Page 7500 provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution. . . . This is a project that the judiciary is ill equipped to undertake." (Citations omitted; internal quotation marks omitted.) Id., 590.
In analyzing the plaintiff's breach of contract claim, the court stated, "[i]n reality, a claim such as that advanced by the plaintiff raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. . . . Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of `educational malpractice' are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. . . . In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." Id., 590-91.
Although the plaintiff's claim in Gupta was for breach of contract, the court's discussion of tort principles and the associated policy considerations making their application difficult, if not impossible, was essential to its analysis. Implicit in the court's rejection of a breach of contract claim arising from educational services, except in two specific situations, is a rejection of any claim for negligent education or educational malpractice. See also Bell v. West Haven Board ofEducation, Superior Court, judicial district of New Haven at New Haven, Docket No. 399597 (December 29, 1997, Hartmere, J.).
Based upon the Supreme Court's discussion in Gupta, of the difficulty of applying tort principles to claims based on a failure to provide an effective education, and its implicit rejection of a claim for negligent education, this court finds that a cause of action for negligent education, as alleged in count one, cannot be maintained. Accordingly, the defendant's motion to strike count one is granted. CT Page 7501
Count Two
Count two sounds in breach of contract. The defendant moves to strike count two on the ground that sucn a cause of action is precluded by the reasoning of cases rejecting a cause of action arising from educational services.
In Gupta v. New Britain Hospital, supra, 239 Conn. 591, the Supreme Court found that the policy considerations militating against a tort action based upon allegations of failure to provide an effective education were equally applicable when the action is based on a breach of contract claim. The court did, however, identify two situations where a claim for breach of contract might lie. Id., 592. "The first [exception] would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . ." Id., 592-93. The court cited two cases supporting the exception based on a "fundamental failure" of the educational program — Wickstrom v. North Idaho College, 111 Idaho 450,725 P.2d 155 (1986); and Ross v. Creighton University, 957 F.2d 410, (7th Cir. 1992)
In Wickstrom v. North Idaho College, supra, 725 P.2d 155, the Idaho Supreme Court held that a cause of action in contract might be maintained where there was a failure to provide the fundamentals of a course. "Such fundamentals would include the number of days/hours required to complete a prescribed course of study and other objective criteria in a course's presentation. Such a failure to provide objective fundamentals, which could result in a breach of the implied contract between college and student, would not implicate the policy concerns regarding the viability of contract claims predicated upon the more subjective nuances of the teacher-student relationship (i.e., methodology of teaching and other matters usually raised under the rubric, "educational malpractice" . . .). Id., 158 n. 1.
In Ross v. Creighton University, supra, 957 F.2d 410, the plaintiff alleged that the defendant university promised to provide him with an opportunity to obtain a meaningful education and a degree at the school in light of his significant academic limitations. Id., 411. The plaintiff's academic abilities differed significantly from the average student attending the defendant school. Id. The plaintiff alleged that he was induced to attend to play basketball for the defendant. Id. The court CT Page 7502 found that these allegations were more than a repackaging of the educational malpractice claims and were sufficient to state a cause of action for breach of contract. Id., 417. The court found that the complaint fairly alleged that the university made a specific promise that the plaintiff would be able to participate meaningfully in its academic program and it would provide specific services in order for him to do so. Id. The plaintiff alleged that the defendant breached their contract and denied him a real opportunity to participate in the academic program by failing to perform five specific commitments it had to the plaintiff. The court determined that such a claim could be adjudicated without assessing whether the services provided were deficient, but rather by determining whether the plaintiff had been provided with any real or meaningful access to the university's academic program at all. Id. The court explained that the inquiry would be an objective assessment of whether the defendant attempted to perform on its promise, rather than an inquiry into whether the school had provided a deficient education. Id.
As demonstrated by Wickstrom and Ross, the alleged fundamental failure of the educational program must be objectively measurable. A claim that invites inquiry into subjective aspects of a program, such as quality or methodology, implicates the policy considerations the court discussed in Guptav. New Britain Hospital, supra, 239 Conn. 591, in allowing a breach of contract claim only in very limited situations. A breach of contract claim can only be maintained where it does not implicate those policies, i.e., where the inquiry constitutes an objective assessment.
In the present case, the plaintiffs reallege all the paragraphs of the first count of the complaint in the second count. Paragraph 9 provides in part: "the defendant repeatedly assured the plaintiff that it could provide Joel with an individualized educational program which would not only recognize and address Joel's learning needs, but would do so better than would a special education facility." The plaintiffs further allege that the defendant "through the words and actions of its employees and agents, and through its promotional literature, promised the plaintiffs that it would provide Joel with [an] individualized educational program . . . which would include the appropriate teaching, training, education and resources that he required as a student diagnosed with and suffering from ADHD." Count two, ¶¶ 28 and 29. These allegations, unlike those in Ross, CT Page 7503 do not constitute a specific contractual promise, a breach of which is objectively measurable. Assessing whether Joel was given the "appropriate" teaching, etc., that he "needed" is precisely what "the judiciary is ill equipped to undertake." Gupta v. NewBritain Hospital, supra, 239 Conn. 590.
The second instance identified by the court in Gupta where a breach of contract for inadequate education would be maintainable "would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases on this point — Cencor, Inc. v. Tolman, 868 P.2d 396 (Colo. 1994); and Paladino v. Adelphi University, 89 App.Div.2d 85, 454 N.Y.S.2d 868
(1982).
In Cencor v. Tolman, supra, 868 P.2d 396, the Colorado Supreme Court held that a breach of contract action could be maintained against the defendant vocational school where there were allegations that the school had made specific promises, such as promises to provide modern, functioning equipment; computer training; and qualified instructors, and did not do so. Id., 400. In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court noted that a breach of contract action might lie if a school provided no educational services, or agreed to provide certain specific services such as a set number of hours of instruction, and failed to do so.
In the present case, the plaintiffs argue that the alleged promises were essentially to provide their son with an individualized educational curriculum, including the appropriate teaching, training, education and resources he required in light of his ADHD. The plaintiffs do not allege in the second count that the defendant promised to provide specific books, employ specific teaching methods, teach specific courses or provide "special education" within the meaning of General Statutes §10-76a et seq., and to abide by the requirements imposed on public schools by § 10-76a et seq. The promises alleged here are not specific measurable obligations distinguishable from an overall obligation to provide a reasonable program. Based on the promises alleged, specifically the allegations in paragraphs 9, 28, and 29, the court finds that the defendant promised to provide Joel Fletcher with an education that would meet his needs, i.e., an appropriate and effective education. These alleged promises are vague, general and cannot meet the CT Page 7504 exceptions described in Gupta.
The court rejects the plaintiffs' argument that granting the motion to strike would leave them without a remedy, which would shock the conscience of the framers of our Connecticut Constitution. The plaintiffs argue that because administrative remedies are available to plaintiffs in New York, but not available to plaintiffs in Connecticut, a policy of judicial noninterference in educational issues is inappropriate in Connecticut. The fact that Connecticut does not regulate private schools to the same extent as other jurisdictions, such as New York, that recognize actions based on claims of inadequate education only in very limited circumstances, cannot form the basis for expanding the availability of such a remedy in this state. The problems applying tort principles to these claims remain. The courts of this state are inappropriate forums for setting educational standards and determining classroom policy. These tasks are better left to professional educators. Although this state exercises little supervision over private schools, our courts are ill equipped to act as educational watchdogs. The plaintiffs' argument is unpersuasive to this court and is more appropriately made to the legislature.
The court finds that the allegations in count two do not fall within the exceptions to the rule barring claims for inadequate education identified in Gupta. The court, therefore, grants the defendant's motion to strike count two.[1]
Count Three
Count three sounds in fraudulent misrepresentation. The defendant moves to strike on the grounds that it is precluded by the reasoning of the cases rejecting a cause of action arising from educational services and that it fails to state a claim as it contains no alleged misrepresentations of fact.
"The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to [its] detriment." (Internal quotation marks omitted.) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 164,714 A.2d 21 (1998). CT Page 7505
In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court considered the plaintiffs' claims for fraudulent misrepresentation against the defendant school. There, the plaintiffs alleged that the defendant made representations that it was a school of the highest quality; it would provide an education superior to the public school system; it would provide the plaintiffs' son with individualized instruction in basic skills when needed; it would furnish periodic progress reports to the parents; and the plaintiffs' son was making adequate progress. Id., 873-74. The plaintiffs alleged that the representations were untrue in that the defendant did not provide their son with a quality education, the individualized instruction he needed, or a superior education to the public school, and that the defendant gave them false and misleading progress reports. Id., 874. The plaintiffs further alleged that the defendant made the representations to intentionally deceive the plaintiffs so that they would keep their son enrolled at the school and that the plaintiffs, in reliance on these representations, did keep their son enrolled. Id.
The court in Paladino determined that the misrepresentations alleged were not actionable, although it recognized that intentional torts against educators are viable actions. Paladinov. Adelphi University, supra, 454 N.Y.S.2d 874. The court explained that the alleged misrepresentations concerning the quality of the defendant's educational program were statements of opinion, not "statements of fact capable of proof." Id.
The court found that the record contradicted the alleged misrepresentations about the accuracy of the progress reports provided. Id. "Clearly the record fails to bear out the claim that the school made false representations to the parents. . . The reports were not only accurate, but contradict any claim that the school engaged in a planned course of deception." Id., 875. The court also found that the record did not support a finding of the alleged misrepresentations by the defendant that it would provide necessary tutoring to the plaintiffs' son. Regarding that claim, the court stated, "[w]here the misrepresentation is a promise to perform a service in the future, an action for [fraudulent misrepresentation] is not available and the plaintiff is relegated to contractual remedies unless it can be shown that the promiser had no intention of performing the future act at the time the promise was made. . . . Since special attention was given . . . and tutoring was in fact provided, the statement of future intention was kept and may not provide a basis for CT Page 7506 recovery." (Citations omitted.) Id.
Here, the plaintiffs have included allegations that relate to statements of opinion, not fact, or that simply restate the educational malpractice claim and invite an improper inquiry by the court. The plaintiff, however, has also sufficiently alleged facts, which if provable, would support a cause of action for fraudulent misrepresentation. The plaintiffs allege, for example, that the defendant provided false and/or misleading reports regarding their son's progress. These allegations are the same as ones made, but rejected, in Paladino. The court in Paladino, however, did not reject a claim based on those allegations because they were statements of opinion, but rather rejected them because the evidence in the record contradicted them. This court, however, is faced with a motion to strike, whereas the court inPaladino was dealing with a motion for summary judgment and considered evidence in the record in deciding that the plaintiff could not maintain its claims for fraudulent misrepresentation. It is possible that the court might find, as in Paladino, that this count would not survive a motion for summary judgment. The court, however, is dealing with a motion to strike.
The motion to strike is used to test the sufficiency of a pleading. Peter-Michael, Inc. v. Sea Shell Associates, supra,244 Conn. 270-71. A court must deny a motion to strike if facts provable in the complaint would support a cause of action. In the present case, for example, the plaintiffs' allegation that the defendant provided false or misleading progress reports relates to a misrepresentation of fact. The plaintiffs sufficiently have alleged that the defendant made such representations willfully in order to induce them to enroll their son and/or keep him enrolled, and they did keep him enrolled based on these misrepresentations and were injured. This court concludes that facts provable in the third count would support a cause of action for fraudulent misrepresentation. The motion to strike the third count, therefore, is denied.
Count Four
Count four sounds in unjust enrichment. The plaintiffs reallege the first three counts in their entirety and further allege that "the defendant has been unjustly enriched by its receipt of tuition payments by the plaintiffs, to the detriment of the plaintiffs." The defendant moves to strike on the ground that it is precluded by the reasoning of cases rejecting a cause CT Page 7507 of action arising from educational services.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefit[t]ed, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) Hartford Whaler's Hockey Club v.Uniroyal Goodrich Tire Co., 231 Conn. 276, 282-83, 649 A.2d 518
(1994)
The plaintiffs argue that they have sufficiently pleaded the requisite elements for a claim of unjust enrichment and that that is the only inquiry for the court on a motion to strike. The plaintiffs oversimplify the court's task in ruling on a motion to strike. The court must determine whether the facts provable in the complaint would support a cause of action. Peter-Michael,Inc. v. Sea Shell Associates, supra, 244 Conn. 270-71. This determination requires the court to consider whether a cause of action is recognized in this state under the facts alleged, not simply to compare the complaint with a checklist of elements looking for certain magic words. A motion to strike "may [also] be used to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Burns v. Hanson, Superior Court, judicial district of at Docket No. 9472342 (March 8, 1995, Stanley, J.) Just as it is not necessary for a plaintiff to use talismanic words to make out a cause of action, it is possible to use talismanic words and still not allege facts sufficient to support a cause of action, such as where policy considerations do not allow recognition of such an action based on the facts alleged. This case presents CT Page 7508 such a situation.
In count four the plaintiffs essentially allege that the defendant received the benefit of the tuition the plaintiffs paid; the defendant unjustly did not provide the promised educational services to the plaintiffs' son; and the failure of the defendant in providing said services was to the plaintiffs' detriment.
As the Supreme Court stated in Hartford Whaler's Hockey Clubv. Uniroyal Goodrich Tire Co., supra, 231 Conn. 282-83, a right of recovery for unjust enrichment is based on it being unjust, inequitable, or unconscionable for the defendant to retain the benefit conferred. In the present case, this type of determination involves the type of inquiry the court found impermissible in Gupta v. New Britain Hospital, supra,239 Conn. 574, in limiting breach of contract actions for educational services to two narrow situations, and rejecting an action for educational malpractice. In Gupta, the court rejected a cause of action based upon claims that focus on the reasonableness of conduct by schools in providing educational services to students. Id., 590. Inquiry into whether the defendant was unjustly enriched by receipt of the plaintiffs' tuition payments requires an examination of the quality and value of services provided in return. Under the reasoning of the Supreme Court in Gupta, actions that necessitate such an inquiry cannot be maintained whether they are brought as negligence, breach of contract or, as here, unjust enrichment claims. The plaintiffs cannot disguise their impermissible claims sounding in negligence and breach of contract as an unjust enrichment claim.
The plaintiffs assert that it would be dangerous to readGupta v. New Britain Hospital, supra, 239 Conn. 574, as immunizing private schools from liability for unjust enrichment. This court finds that striking this count prevents the plaintiffs from maintaining a claim that is impermissible under Gupta. The defendant's motion to strike count four is granted.
Count Five
In count five the plaintiffs allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] The plaintiffs reallege paragraphs 1-37
of count three (fraudulent misrepresentation). They further allege that both they and the defendant are persons within the CT Page 7509 meaning of CUTPA, that the defendant was engaged in trade and commerce, and that the plaintiffs were consumers within the meaning of CUTPA. They allege that the actions of the defendant constitute unfair trade practices in violation of CUTPA. The defendant moves to strike on the ground that this CUTPA count is premised on the fraud and breach of contract claims, which must fail, and therefore, this claim must also fail.[3]
The court has found that the plaintiffs have alleged sufficient facts to state a cause of action for fraudulent misrepresentation, and therefore, is denying the defendant's motion to strike count three. The facts alleged in the fraud count (count three) are realleged in the fifth count and form the basis for the allegations of unfair trade practices. Because the alleged CUTPA violation is based on a cognizable fraud claim, the court finds that the plaintiffs have sufficiently alleged facts sufficient to state a CUTPA claim. The defendant's motion to strike count six is denied.
Prayer for relief
The plaintiffs' prayer for relief includes "prejudgment interest on all counts." The defendant moves to strike on the ground that the damages sought here are not liquidated sums subject to prejudgment interest.
A motion to strike is the proper method for attacking the legal sufficiency of any prayer for relief in a complaint. Practice Book § 10-39. A motion to strike will be granted if the relief sought cannot legally be awarded to the plaintiffs.Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298, 478 A.2d 257
(1984).
The plaintiffs argue that the tuition money paid to the defendant is a liquidated sum and prejudgment interest is applicable.[4] General Statutes § 37-3a provides in relevant part: "interest may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "Section 37-3a provides a substantive right that applies only to certain claims. . . . It does not allow prejudgment interest on claims that . . . do not involve the wrongful detention of money . . . . (Citations omitted.) Foley v.Huntington Co., 42 Conn. App. 712, 739, 682 A.2d 1026 (1996). "`Under § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under CT Page 7510 the circumstances.'" Id.; See also Cecio Bros., Inc. v. Feldmann,161 Conn. 265, 287 A.2d 374 (1972). Prejudgment interest under General Statutes § 37-3a is applicable to "breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Foley v. Huntington Co., 42 Conn. App., supra, 740. "[I]nterest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." (Internal quotation marks omitted.) Id., 740 n. 11.
The plaintiffs allege that they entered into enrollment contracts with the Mead School and that they paid tuition in order for their son to attend. There are no allegations that the Mead School detained money that was due and payable to the plaintiffs. There are no allegations that Mead owed the plaintiffs a specified sum under a contract or a sum determinable from the terms of a contract. The claims which remain after this court's decision on this motion to strike, i.e., fraudulent misrepresentation and CUTPA, are not claims whereby the plaintiffs "seek to regain money detained by another." Foley v.Huntington Co., supra, 42 Conn. App. 742. Because the remaining claims do no involve the wrongful detention of money, the court finds that General Statutes § 37-3a is inapplicable. The defendant's motion to strike the plaintiffs' prayer for prejudgment interest, therefore, is granted.
SO ORDERED.
BY THE COURT,
TIERNEY JUDGE OF THE SUPERIOR COURT