[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
This case is one of four consolidated cases brought against the defendant, The Mead School for Human Development. In each case, the defendant filed a Motion to Strike the plaintiffs' amended complaints. Oral arguments on all four Motions to Strike were heard by this court on October 26, 1998.
In the present case, the plaintiffs, Stuart Brodsky and Lynda Brodsky bring this action individually and as parents, next CT Page 7411 friends and legal guardians of their minor son, Kyle Brodsky, against the defendant, The Mead School for Human Development (Mead School, or Mead) The plaintiffs' amended complaint, dated March 4, 1998, contains nine counts sounding in negligence (count one), breach of contract (count two) fraudulent misrepresentation (count three), negligent misrepresentation (count four), unjust enrichment (count five), Connecticut Unfair Trade Practices Act ("CUTPA") (count six), intentional infliction of emotional distress (count seven), negligent infliction of emotional distress (count eight) and interference with plaintiffs' statutory duty to educate children (count nine). The defendant filed a Motion to Strike all nine counts of the amended complaint, the plaintiffs' prayer for prejudgment interest, and prayer for damages pursuant to General Statutes § 10-185.
STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998). "[A] motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading at which the motion is directed."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495,497, 495 A.2d 286 (1985).
The facts alleged by the plaintiffs, and taken as true for purposes of this motion to strike, can be summarized as follows. The defendant, Mead School, is a private school located in Riverside, Connecticut. The plaintiffs' son, Kyle, began attending Mead at age four, when he was enrolled in their pre-kindergarten program for the 1991-92 academic year. Prior to Kyle's enrollment at Mead, he attended preschool at a private school in New York. In 1991, the plaintiffs met with Norman Baron, the director at Mead, who recognized and expressed concern that Kyle had "special needs" that would need to be addressed if he were to attend Mead. Count one, ¶ 9. Before accepting Kyle at Mead, Mr. Baron had a pre-school teacher meet with Kyle on one occasion, he spoke with the headmistress of Kyle's New York CT Page 7412 pre-school, and he, along with Mead's Director of Admissions, visited Kyle's summer camp and observed his interaction with counselors and other campers.
The plaintiffs signed "enrollment contracts" for Kyle with the Mead School for the academic years: 1991-92; 1992-93; 1993-94 and 1994-95. Kyle attended the Mead School regularly from the 1991-92 school year through the fall semester of 1994, and the plaintiffs paid tuition during these periods. Kyle was promoted each year to the next grade level. The plaintiffs received progress reports that indicated that Kyle was progressing in all academic areas.
During the 1993-94 school year, Mr. Baron contacted the plaintiffs regarding Kyle's behavior and recommended that Kyle receive psychological counseling from the school's staff therapist, David Geller. Kyle had session with Mr. Geller from the fall of 1993 through December 1994. In December 1994, Mr. Geller informed the plaintiffs that Kyle's behavior was deteriorating and suggested additional psychological therapy. At the same time, Mr. Baron contacted the plaintiffs and requested that Kyle be tested by a licensed psychologist and recommended a Dr. Cohen-Sandler. The plaintiffs initially met with Dr. Cohen-Sandler on December 20, 1994. Kyle was tested and evaluated during January 1995.
In late January 1995, Mr. Baron informed the plaintiffs that as of February 2, 1995, Kyle would not be allowed to attend school during the pendency of his psychological testing. On February 2, 1995, Dr. Cohen-Sandler issued a report on her findings, including that further evaluation was necessary to be more definitive. The Mead School would not allow Kyle to return to school and demanded further testing. In February 1995, Kyle was evaluated by Dr. Turecki, a licensed child psychiatrist. On February 28, 1995, Mr. Baron wrote a letter to the plaintiffs outlining steps that plaintiffs would need to take with respect to Kyle before he would be allowed to return to school.[1]
In March 1995, Dr. Turecki recommended to Carol Young, Kyle's "Home Center Director" that Kyle be allowed to return to school. Mead did not allow Kyle to return and demanded further testing. Kyle then underwent both speech and hearing evaluations. Kyle was still not allowed back to school and Mead demanded further testing. During April and May 1995, Kyle was evaluated by Dr. Pruitt, a child psychiatrist from the Yale Child Study CT Page 7413 Center. On June 6, 1995, Dr. Pruitt issued his report. Kyle was still not allowed to return to school and Mead demanded further testing. In June 1995, the plaintiffs were informed that Kyle would not be allowed back at Mead, either for the remainder of the spring semester or for the following academic year. Kyle, therefore, did not receive an education during the spring 1995 semester. Kyle later enrolled in the Eagle Hill School in Southport, Connecticut for the fall 1995 semester.
Count One
Count one sounds in negligence. The defendant moves to strike on the ground that the Connecticut Supreme Court has declined to recognize a cause of action for negligent education.
The plaintiffs list eleven ways in which the defendant was negligent including failing to diagnose Kyle's language and hearing problems; failing to provide a "personalized educational program" as promised; failing to support Kyle's academic strengths and address his weaknesses and failing to put Kyle's academic skills at or near a level where they should have been.
The defendant cites Gupta v. New Britain Hospital,239 Conn. 574, 687 A.2d 111 (1996) in support of its contention that the Connecticut Supreme Court has rejected such a cause of action. The plaintiffs have not attempted to distinguish Gupta. Instead, they cite a Montana case, B.M. v. State, 649 P.2d 425
(Mont. 1982), to support a finding that Mead owed the plaintiffs' son a duty of care. In that case, the Montana Supreme Court found that the State, based on statutes governing special education, owed a duty of care to special education students. Id., 427. The plaintiffs suggest that Connecticut education statutes provide a framework for imposing that same duty of care in the present case.
The primary distinction between the Montana case and the present case is that the Montana case involved acts of public school officials and Montana's statutes and regulations imposed duties on such public school officials in regard to special education students. Id. In the present case, the defendant is a private school and Connecticut statutes regarding special education do not impose duties on private schools. General Statutes § 10-76a et seq.
In the present case, this court finds that the Supreme CT Page 7414 Court's decision in Gupta v. New Britain Hospital, supra,239 Conn. 574, controls this issue. In Gupta, the plaintiff was a physician who was dismissed from a residency training program at the defendant hospital. Id., 575. The plaintiff sued alleging that the defendant hospital violated his residency agreement and thereby breached his employment contract. Id. The trial court granted the hospital's motion for summary judgment after concluding that the residency agreement created an educational relationship rather than an employment relationship and that the plaintiff's dismissal was an academic decision, not an employment decision. Id., 580-81.
On appeal, the Supreme Court considered the plaintiff's claim that even if his dismissal was an academic decision, the hospital still breached its obligations under the residency contract by failing "to provide him a residency program that would reasonably and adequately train him.'" Id., 589-90. The Supreme Court concluded that "[w]here the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution . . . This is a project that the judiciary is ill equipped to undertake." (Citations omitted; internal quotation marks omitted.) Id., 590.
In analyzing the plaintiff's breach of contract claim, the court stated, "[in] reality, a claim such as that advanced by the plaintiff raise[s] questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts . . . Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of `educational malpractice' are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. . . . In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." Id., 590-91. CT Page 7415
Although the plaintiff's claim in Gupta was for breach of contract, the court's discussion of tort principles and the associated policy considerations making their application difficult, if not impossible, was essential to its analysis. Implicit in the court's rejection of a breach of contract claim. arising from educational services, except in two specific situations, is a rejection of any claim for negligent education or educational malpractice. See also Bell v. West Haven Board ofEducation, Superior Court, judicial district of New Haven at New Haven, Docket No. 399597 (December 29, 1997, Hartmere, J.)
Based upon the Supreme Court's discussion in Gupta, of the difficulty of applying tort principles to claims based on a failure to provide an effective education, and its implicit rejection of a claim for negligent education, this court finds that a cause of action for negligent education, as alleged in count one, cannot be maintained. Accordingly, the defendant's motion to strike count one is granted.
Count Two
The second count sounds in breach of contract. The defendant moves to strike on the ground that this claim is precluded by the reasoning of cases rejecting a cause of action arising from educational services.
In Gupta v. New Britain Hospital, supra, 239 Conn. 591, the Supreme Court found that the policy considerations that preclude a tort action based upon allegations of failure to provide an effective education were equally applicable when the action is based on a breach of contract claim. The court did, however, identify two situations where a claim for breach of contract might lie. Id., 592. In the present case, the plaintiffs argue. that their allegations fall within both of these exceptions.
"The first [exception] would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . ." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases supporting the exception based on a "fundamental failure" of the educational program — Wickstrom v. North Idaho College, 111 Idaho 450,725 P.2d 155 (1986); and Ross v. Creighton University, 957 F.2d 410, (7th Cir. 1992). CT Page 7416
In Wickstrom v. North Idaho College, supra, 725 P.2d 155, the Idaho Supreme Court held that a cause of action in contract might be maintained where there was a failure to provide the fundamentals of a course. "Such fundamentals would include the number of days/hours required to complete a prescribed course of study and other objective criteria in a course's presentation. Such a failure to provide objective fundamentals, which could result in a breach of the implied contract between college and student, would not implicate the policy concerns regarding the viability of contract claims predicated upon the more subjective nuances of the teacher-student relationship (i.e., methodology of teaching and other matters usually raised under the rubric, educational malpractice' . . .)." Id., 158 n. 1.
In Ross v. Creighton University, supra, 957 F.2d 410, the plaintiff alleged that the defendant university promised to provide him with an opportunity to obtain a meaningful education and a degree at the school in light of his significant academic limitations. Id., 411. The plaintiff's academic abilities differed significantly from the average student attending the) defendant school. Id. The plaintiff alleged that he was induced to attend to play basketball for the defendant. Id. The court found that these allegations were more than a repackaging of the educational malpractice claims and were sufficient to state a cause of action for breach of contract. Id., 417 The court found that the complaint fairly alleged that the university made a specific promise that the plaintiff would be able to participate meaningfully in its academic program and it would provide specific services in order for him to do so. Id. The plaintiff alleged that the defendant breached the contract and denied him a real opportunity to participate in the academic program by failing to perform five specific commitments it had to the plaintiff. The court determined that such a claim could be adjudicated without assessing whether the services provided were deficient, but rather by determining whether the plaintiff had been provided with any real or meaningful access to the university's academic program at all. Id. The court explained that the inquiry would be an objective assessment of whether the defendant attempted to perform on its promise, rather than an inquiry into whether the school had provided a deficient education. Id.
As demonstrated by Wickstrom and Ross, the alleged fundamental failure of the educational program must be objectively measurable. A claim that invites inquiry into CT Page 7417 subjective aspects of a program, such as quality or methodology, implicates the policy considerations the court discussed in Guptav. New Britain Hospital, supra, 239 Conn. 591, in rejecting a breach of contract claim except in very limited situations. A breach of contract claim can only be maintained where it does not implicate those policies, i.e., where the inquiry constitutes an objective assessment.
In the present case, the plaintiffs allege in paragraph 66 of the second count of their amended complaint that Mead promised to provide their son "with a personalized education program which would include the appropriate teaching, training, education and resources that he required as a student with special needs." This court does not find a specific promise, as in Ross. A promise to provide a "personalized education program" is too vague to meet the exception. A breach of this alleged promise would not be objectively measurable. The plaintiffs allege that the defendant breached this agreement and fundamentally failed by not providing Kyle "with the appropriate reading, writing, spelling, and math instruction that he required because of his special needs." (Emphasis added.) ¶ 67c. The court would need to assess the quality and appropriateness of the course of instruction and teaching methods employed. This type off assessment is precisely what "the judiciary is ill equipped to undertake." Gupta v. NewBritain Hospital, supra, 239 Conn. 590. The plaintiffs further allege that the defendant fundamentally failed by failing to teach their son to "read, write and perform arithmetic functions." ¶ 67f. Inquiry into a student's response to an educational program also involves review of teaching methodologies, i.e., the very type of inquiry that courts have declined to engage in for the policy reasons discussed in Gupta.
The second instance identified by the court in Gupta where a breach of contract for inadequate education would be maintainable "would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases on this point — Cencor, Inc. v. Tolman, 868 P.2d 396 (Colo. 1994); and Paladinov. Adelphi University, 89 App.Div.2d 85, 454 N.Y.S.2d 868
(1982).
In Cencor v. Tolman, supra, 868 P.2d 396, the Colorado Supreme Court held that a breach of contract action could be maintained against the defendant vocational school where there CT Page 7418 were allegations that the school had made specific promises, such as promises to provide modern, functioning equipment, computer training, and qualified instructors, and did not do so. Id, 400. In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court noted that a breach of contract action might lie if a school provided no educational services, or agreed to provide certain specific services such as a set number of hours of instruction, and failed to do so.
In the present case, the plaintiffs argue that the alleged promises, as set forth in the second count, were essentially to provide their son with an individualized educational curriculum. The plaintiffs, however, do not allege in the second count that the defendant promised to provide specific books, employ specific teaching methods, or teach specific courses. The plaintiffs do not allege that the defendant promised to test Kyle for learning disabilities or to provide "special education" within the meaning of General Statutes § 10-76a et seq., and/or to abide by the requirements imposed on public schools by § 10-76a et seq.
This court finds that based on the allegations in count two, the defendant promised to provide Kyle Brodsky with an appropriate, effective education in light of his needs. This court concludes that the plaintiffs, in the second count, do no more than allege that the defendant had a deficient academic program and that their son received an inadequate, ineffective education. The promises alleged here are vague, and therefore, are not specific measurable obligations distinguishable from an overall obligation to provide a reasonable program. The court finds that the allegations in count two do not fall within the exceptions to the rule barring claims for inadequate education identified in Gupta.
The court rejects the plaintiffs' argument that granting the motion to strike would leave them without a remedy, which would shock the conscience of the framers of our Connecticut Constitution. The plaintiffs argue that because administrative remedies are not available to plaintiffs in Connecticut, but are available to plaintiffs in other jurisdictions such as New York, a policy of judicial noninterference in educational issues is inappropriate in Connecticut. The fact that Connecticut does not regulate private schools to the same extent as other jurisdictions such as New York, that recognize actions based on claims of inadequate education only in very limited circumstances, cannot form the basis for expanding the CT Page 7419 availability of such a remedy in this state. The problems applying tort principles to these claims remain. The courts of this state are an inappropriate forum for setting educational standards and determining classroom policy. These tasks are better left to professional educators. Although this state exercises little supervision over private schools, our courts remain ill equipped to act as educational watchdogs. The plaintiffs' argument is unpersuasive to this court and is more appropriately made to the legislature. The court, therefore, grants the defendant's motion to strike count two.[2]
Count Three
Count three sounds in fraudulent misrepresentation. The defendant moves to strike on the ground that the reasoning of the cases rejecting a cause of action based on educational services precludes this claim.
"The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false representation to [its] detriment." (Internal quotation marks omitted) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 164,714 A.2d 21 (1998).
In Paladino v. Adeiphi University, supra, 454 N.Y.S.2d 868, the court considered the plaintiffs' claims for fraudulent misrepresentation against the defendant school. There, the plaintiffs alleged that the defendant made representations that it was a school of the highest quality; it would provide an education superior to the public school system; it would provide the plaintiffs' son with individualized instruction in basic skills when needed; it would furnish periodic progress reports to the parents; and the plaintiffs' son was making adequate progress. Id., 873-74. The plaintiffs alleged that the representations were untrue in that the defendant did not provide their son with a quality education, the individualized instruction he needed, or a superior education to the public school, and that the defendant gave them false and misleading progress reports. Id., 874. The plaintiffs further alleged that the defendant made the representations to intentionally deceive the plaintiffs so that they would keep their son enrolled at the school and that the plaintiffs, in reliance on these CT Page 7420 representations, did keep their son enrolled. Id.
The court in Paladino determined that the misrepresentations alleged were not actionable, although it recognized that intentional torts against educators are viable actions. Paladinov. Adelphi University, supra, 454 N.Y.S.2d 874. The court explained that the alleged misrepresentations concerning the quality of the defendant's educational program were statements of opinion, not "statements of fact capable of proof." Id.
The court found that the record contradicted the alleged misrepresentations about the accuracy of the progress reports provided. Paladino v. Adelphi University, supra, 454 N.Y.S.2d 874 . "Clearly the record fails to bear out the claim that the school made false representations to the parents . . . The reports were not only accurate, but contradict any claim that the school engaged in a planned course of deception." Id., 875. The court also found that the record did not support a finding of the alleged misrepresentations by the defendant that it would provide necessary tutoring to the plaintiffs' son. Regarding that claim, the court stated, "[w]here the misrepresentation is a promise to perform a service in the future, an action for [fraudulent misrepresentation] is not available and the plaintiff is relegated to contractual remedies unless it can be shown that the promisor had no intention of performing the future act at the time the promise was made. . . . Since special attention was given . . . and tutoring was in fact provided, the statement of future intention was kept and may not provide a basis for recovery." (Citations omitted.) Id.
The policy concerns underlying the Supreme Court's decision in Gupta v. New Britain Hospital, supra, 239 Conn. 574, preclude this court from allowing a cause of action to be maintained where an educational malpractice claim is simply dressed in different clothes. In the third count, the plaintiffs allege many facts that invite an improper inquiry for the court and therefore, alone, would not support any cause of action.
The plaintiffs have also alleged, however, facts, which if provable, would support a cause of action for fraudulent misrepresentation. The plaintiffs allege, for example, that the defendant provided false and/or misleading reports regarding their son's progress. These allegations are the same as ones made, but rejected, in Paladino. The court in Paladino, however, did not reject a claim based on those allegations because they CT Page 7421 were statements of opinion, but rather, rejected them because the evidence in the record contradicted them. This court, however, is faced with a motion to strike, whereas the court in Paladino was dealing with a motion for summary judgment and considered evidence in the record in deciding that the plaintiff could not maintain its claims for fraudulent misrepresentation. It is possible that the court might find, as in Paladino, that this count would not survive a motion for summary judgment. The court, however, is dealing with a motion to strike.
The motion to strike is used to test the sufficiency of a pleading. Peter-Michael, Inc. v. Sea Shell Associates, supra,244 Conn. 270-71. A court must deny a motion to strike if facts provable in the complaint would support a cause of action. In the present case, for example, the plaintiffs' allegation that the defendant provided false or misleading progress reports relates to a misrepresentation of fact. The plaintiffs have alleged that the defendant made misrepresentations willfully in order to induce them to enroll Kyle and/or keep him enrolled, and they did keep him enrolled based on these misrepresentations, and were injured. This court concludes that facts provable in the third count would support a cause of action for fraudulent misrepresentation. The motion to strike the third count, therefore, is denied.
Count Four
Count four sounds in negligent misrepresentation. The defendant moves to strike on the ground that this claim is precluded by the cases rejecting a cause of action arising from educational services.[3]
All paragraphs from the first three counts, negligence, breach of contract, and fraudulent misrepresentation are realleged. The plaintiffs allege the same misrepresentations as in count three (fraudulent misrepresentation), but allege that they were made negligently.
For the policy reasons set forth previously with regard to the plaintiffs' negligence claim, the court finds that this claim cannot be maintained. In the context of educational services, "negligent misrepresentations and judgmental errors ought not be actionable . . . ." Paladino v. Adelphi University, supra,454 N.Y.S.2d 868, 874 (1982). See also Peter W. v. San FranciscoUnified School District, 60 Cal.App.3d 814, 827 (1976). CT Page 7422
The defendant's motion to strike count four is granted.
Count Five
Count five sounds in unjust enrichment. The plaintiffs reallege all prior paragraphs and further allege that "[a]s a result of defendant's fraudulent misrepresentations, the defendant has been unjustly enriched by its receipt of tuition payments by Dr. and Mrs. Brodsky, to the detriment of Dr. and Mrs. Brodsky." Count five, ¶ 80. The defendants move to strike on the ground that it is precluded by the reasoning of cases rejecting a cause of action for negligence arising from educational services.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is consistent with the principles of equity, a broad and flexible remedy . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefit[t]ed, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) Hartford Whaler's Hockey Club v.Uniroyal Goodrich Tire Co., 231 Conn. 276, 282-83, 649 A.2d 518
(1994).
The plaintiffs argue that they have sufficiently pleaded the requisite elements for a claim of unjust enrichment and that that is the only inquiry for the court on a motion to strike. The plaintiffs oversimplify the court's task in ruling on a motion to strike. The court must determine whether the facts provable in the complaint would support a cause of action. Peter-Michael,Inc. v. Sea Shell Associates, supra, 244 Conn. 270-71. This CT Page 7423 determination requires the court to consider whether a cause of action is recognized in this state under the facts alleged, not simply to compare the complaint with a checklist of elements looking for certain magic words. A motion to strike "may [also] be used to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Burns v. Hanson, Superior Court, judicial district of at Docket No. 9472342 (March 8, 1995, Stanley, J.) Just as it is not necessary for a plaintiff to use talismanic words to make out a cause of action, it is possible to use talismanic words and still not allege facts sufficient to support a cause of action, such as where policy considerations do not allow recognition of such an action based on the facts alleged. This case presents such a situation.
In count six, the plaintiffs essentially allege that the defendant received the benefit of the tuition the plaintiffs paid; the defendant unjustly did not provide the promised educational services to the plaintiffs' son; and the failure of the defendant in providing said services was to the plaintiffs' detriment.
As the Supreme Court stated in Hartford Whaler's Hockey Clubv. Uniroyal Goodrich Tire Co., supra, 231 Conn. 282-83, a right of recovery for unjust enrichment is based on it being unjust, inequitable, or unconscionable for the defendant to retain the benefit conferred. In the present case, this type of determination involves the type of inquiry the court found impermissible in Gupta v. New Britain Hospital, supra,239 Conn. 574, in limiting breach of contract actions for educational services to two narrow situations, and rejecting an action for educational malpractice. In Gupta, the court rejected a cause of action based upon claims that focus on the reasonableness of conduct by schools in providing educational services to students. Id., 590. Inquiry into whether the defendant was unjustly enriched by receipt of the plaintiffs' tuition payments requires an examination of the quality and value of services provided in return. Under the reasoning of the Supreme Court in Gupta, actions that necessitate such an inquiry cannot be maintained whether they are brought as negligence, breach of contract or, as here, unjust enrichment claims. The plaintiffs cannot disguise their impermissible claims sounding in negligence and breach of contract as an unjust enrichment claim.
The plaintiffs assert that it would be dangerous to read CT Page 7424Gupta v. New Britain Hospital, supra, 239 Conn. 574, as immunizing private schools from liability for unjust enrichment. This court finds that striking this count prevents the plaintiffs from maintaining a claim that is impermissible under Gupta. The defendant's motion to strike count five is granted.
Count Six
Count six sounds in a violation of CUTPA, General Statutes §42-110a et seq.[4] The defendant moves to strike on the ground that this count is premised on claims of fraud and breach of contract that fail, so the CUTPA claim must also fail.[5]
The plaintiffs reallege paragraphs 1-80 of count five (unjust enrichment) thereby also realleging all paragraphs of their claims of negligence (count one), breach of contract (count two) fraudulent misrepresentation (count three) and negligent misrepresentation (count four). They further allege that both they and the defendant are persons within the meaning of CUTPA, that the defendant was engaged in trade and commerce, and that the plaintiffs were consumers within the meaning of CUTPA. They allege that the actions of the defendant constitute unfair trade practices in violation of CUTPA.
The court has found that the plaintiffs have alleged sufficient facts to state a cause of action for fraudulent misrepresentation, and therefore, is denying the defendants' motion to strike count three. The facts alleged in the fraud count (count three) are realleged in the sixth count and form the basis for the allegations of unfair trade practices. Because the alleged CUTPA violation is based on a cognizable fraud claim, the court finds that the plaintiffs have alleged facts sufficient to state a CUTPA claim. The defendant's motion to strike count six is denied.
Count Seven
Count seven sounds in intentional infliction of emotional distress. The defendant moves to strike on the ground that the plaintiffs fail to allege conduct sufficient to sustain such a claim. The defendant argues that the conduct alleged is not extreme and outrageous.
"In order for the plaintiff to prevail in a case for liability . . . [for intentional infliction of emotional CT Page 7425 distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort." (Citations omitted; internal quotation marks omitted.)DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991).
"For the tort of intentional infliction of emotional distress to be established . . . the plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life . . . . Whelan v. Whelan,41 Conn. Sup. 519, 588 A.2d 251 (1991). "The Restatement puts it as follows: Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" (Internal quotation marks omitted.) Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 20, 597 A.2d 846 (1991) (Berdon, J.).
"The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Mellaly v. EastmanKodak Co., supra, 42 Conn. Sup. 20. "Whether the: defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18.
In the present case, the conduct alleged by the plaintiffs is that the defendant did not allow Kyle to return to school during the pendency of his psycho-educational testing, continued to require additional testing even after Kyle was tested by various CT Page 7426 professionals, and waited until June to inform the plaintiffs of the decision not to allow Kyle to return at all. At the time that the plaintiffs were told that Kyle would not be allowed to return at all, Kyle had been absent for approximately four months. Count seven, ¶ 96. The plaintiffs further allege that the defendant were informed by Dr. Turecki, a psychiatrist involved in Kyle's evaluation, that absence from school was increasing Kyle's feelings of inadequacy and that he recommended that Kyle be allowed to return to school. Count seven, ¶ 46.
The defendant argues that schools have the right to, and do, routinely suspend, expel, and deny admission to students, and that such conduct is not outside the bounds usually tolerated by a decent society. The court agrees that the act of suspending, expelling, or denying admission to a student, alone, is not enough to constitute extreme and outrageous conduct. During the process, however, a school may engage in conduct that is "extreme and outrageous" and demonstrates an intent to cause injury.
In the present case, a trier of fact might construe the defendant's refusal to allow Kyle to return to school for close to four months, without officially expelling him, coupled with repeated demands for psychological testing even after he was tested by different professionals, to exceed the bounds tolerated by a decent society and to evidence an intent to cause injury. The defendant's motion to strike count seven is denied.
Count Eight
Count eight sounds in negligent infliction of emotional distress. The defendant moves to strike on the ground that the conduct alleged is insufficient to support such a claim.
In order to maintain a cause of action for negligent infliction of emotional distress, "the plaintiff has the burden of pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Morris v. Hartford Courant Co.,200 Conn. 676, 513 A.2d 66 (1986).
The plaintiffs reallege all prior paragraphs from all prior counts. They further allege that the defendant was aware of Kyle's special emotional needs and feelings of inadequacy at the CT Page 7427 time that it initially suspended Kyle pending the completion of a psycho-educational evaluation. Even after Kyle underwent a series of psycho-educational tests, the defendant continued to require further testing and did not permit Kyle to return to school. By the time that the defendant officially expelled Kyle, he had missed approximately four months of school. The plaintiffs allege that the defendant acted negligently and that as a result Kyle suffered severe emotional distress, which manifested with physical symptoms. They assert that because they have alleged that Dr. Turecki informed the defendant that Kyle's absence was detrimental to his well being, the harm was foreseeable. Therefore, they argue that they have properly alleged the requisite elements of a cause of action for negligent infliction of emotional distress.
The defendant argues that in deciding to suspend, expel or admit students, a school exercises its professional judgment. Under Gupta v. New Britain Hospital, supra, 239 Conn. 574, tort claims that require evaluation of a school's professional judgment cannot be maintained. They further argue that there is no duty of care that is breached when a school constructively expels a student and, therefore, the plaintiffs have not alleged negligent conduct which violates a duty of care.
The plaintiffs assert that the defendant has a duty to avoid physically injuring its students. They argue that the foreseeability that harm may result if care is not exercised is the test for the existence of a duty to use care. They citeClohessy v. Bachelor, 237 Conn. 31, 45, 675 A.2d 852 (1996) andRK Constructors, Inc. v. Fusco Corp. , 231 Conn. 381, 385-86,650 A.2d 153 (1994) to support their position. Because they have alleged that the harm here was foreseeable, they argue that they have sufficiently alleged a duty.
The court agrees with the defendant that decisions regarding admission, suspension and expulsion involve the exercise of professional judgment. As such, a claim for negligence arising from these events cannot be maintained. While the plaintiff may have alleged a foreseeable harm, that is not enough to survive the motion to strike. "A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the CT Page 7428 plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) RK Constructors, Inc. v. Fusco Corp. , supra, 231 Conn. 386.
The court does not suggest that the defendant is immune from any negligence claims by students for physical injuries. Rather, the court finds that pursuant to Gupta, a negligence claim arising from a school's provision of educational services, its academic policies, or, as in this count, the exercise of its professional judgment, cannot be maintained.
Count Nine
Count nine is entitled, "Interference with Plaintiffs' Statutory Duty to Educate Children." The defendant moves to strike on the ground that General Statutes § 10-184 does not impose liability on a private school or provide any type of private cause of action.
General Statutes § 10-184 compels parents or other persons having control of children to educate children from ages seven through sixteen. General Statutes § 10-185 provides in part: "Each day's failure on the part of a person to comply with any provision of section 10-184 shall be a distinct offense, punishable by a fine not exceeding twenty-five dollars."
The plaintiffs reallege all prior paragraphs from all eight prior counts. The plaintiffs further allege that the defendant "breached its legal duty to ensure that [its] students receive the proper educational instruction." Count nine, ¶ 114. In paragraph 115, the plaintiffs allege, "As a result of the defendant's actions, Defendant violated its statutory duties and is subject to the statutory penalties prescribed in Section10-185 of the Connecticut General Statutes . . . ."
General Statutes § 10-184 imposes duties on parents and persons having control of children. It does not impose duties upon schools. The allegations in count nine, however, refer to a violation of duties by the defendant, Mead School. The plaintiffs argue that § 10-184 implies that third parties will not interfere with a party's obligation under that statutory section. The plaintiffs contend that if a third party, like the defendant, CT Page 7429 causes parents, like the plaintiffs, to be non compliant with this statute, then that third party must be liable for penalties accruing under the statute. Reading § 10-184 in the manner suggested by the plaintiffs, would potentially impose liability on schools when a student is suspended or expelled. Furthermore, there is no allegation that any penalties have been imposed upon the plaintiffs pursuant to General Statutes § 10-185. The court finds that § 10-184 does not apply to the defendant, a private school, and does not create a private cause of action against such a private school. The defendant's motion to strike count nine is granted.
Prayer for relief — damages pursuant to General Statutes § 10-185
The plaintiffs seek statutory damages pursuant to General Statutes § 10-185, on count nine of the complaint. Prayer for Relief ¶ 7. The defendant moves to strike on the ground that the statute does not provide for private damages against a school.
For the reasons set forth in striking count nine, the defendant's motion to strike the plaintiffs' prayer for statutory damages pursuant to General Statutes § 10-185 is granted.
Prayer for relief — prejudgment interest
The plaintiffs' prayer for relief includes "prejudgment interest on all counts." The defendant moves to strike on the ground that the damages sought here are not liquidated sums subject to prejudgment interest.
A motion to strike is the proper method for attacking the legal sufficiency of any prayer for relief in a complaint. Practice Book § 10-39. A motion to strike will be granted if the relief sought cannot legally be awarded to the plaintiffs.Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298, 478 A.2d 257
(1984).
The plaintiffs argue that the tuition money paid to the defendant is a liquidated sum and, therefore, prejudgment interest pursuant to General Statutes § 37-3a is applicable.[6]
General Statutes § 37-3a provides in relevant part: "interest may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "Section 37-3a provides a substantive right that applies only to certain claims. . . . It does not allow prejudgment interest on CT Page 7430 claims that are not yet payable . . . or on claims that do not involve the wrongful detention of money . . . . (Citations omitted.) Foley v. Huntington Co., 42 Conn. App. 712, 739,682 A.2d 1026 (1996). "` Under § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances.'" Id.; See also Cecio Bros.,Inc. v. Feldmann, 161 Conn. 265, 287 A.2d 374 (1972). Prejudgment interest under General Statutes § 37-3a is applicable to "breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party." Foley v.Huntington Co., supra, 42 Conn. App. 740. "[I]nterest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." (Internal quotation marks omitted.) Id., 740 n. 11.
The plaintiffs allege that they entered into enrollment contracts with the Mead School and that they paid tuition in order for their son to attend. There are no allegations that the Mead School detained money that was due and payable to the plaintiffs. There are no allegations that Mead owed the plaintiffs a specified sum under a contract or a sum determinable from the terms of a contract. Furthermore, the court is granting the defendant's motion to strike the plaintiffs' claims for breach of contract (count two) and unjust enrichment (count five) based on the impermissible inquiry that these claims would require. The claims which remain after the court's decision on this motion to strike, i.e., fraudulent misrepresentation, CUTPA and intentional infliction of emotional distress, are not claims whereby the plaintiffs "seek to regain money detained by another." Foley v. Huntington Co., supra, 42 Conn. App. 742. Because the remaining claims do not involve the wrongful detention of money, the court finds that General Statutes § 37-3a
is inapplicable. The defendants' motion to strike the plaintiffs' prayer for prejudgment interest, therefore, is granted.
SO ORDERED.
BY THE COURT,
TIERNEY JUDGE OF THE SUPERIOR COURT